UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE M. HINDS,

        Plaintiff,

vs.

GRAND TRAVERSE COUNTY,

        Defendant.

                           /

Case No. 1:08-cv-393

Hon. Hugh W. Brenneman, Jr.

**OPINION**

Plaintiff has filed a *pro se* civil rights action alleging that defendant Grand Traverse County ("the County') did not hire her because she filed civil rights complaints under state and federal law. This matter is now before the court on defendant's motion for summary judgment (docket no. 64).

      **I.**      **Procedural Background**

Plaintiff set forth the following allegations in her complaint. In June, 2005, plaintiff resigned from her position as a federal employee. Compl. at ¶ 7.[1] On September 21, 2005, plaintiff filed an Equal Employment Opportunity complaint (the "EEO complaint") with the Federal Office of Civil Rights alleging that she was subject to discrimination during her federal employment. *Id.* That same month, plaintiff filed an application with the County's human resources ("HR") department to be considered for employment. *Id.* at ¶ 12. Plaintiff subsequently passed additional tests which enabled her to apply for employment with the County. *Id.* at ¶¶ 13-14. In October 2005,

---

[1] It is undisputed that plaintiff worked for the Transportation Security Administration (TSA), an agency within the Department of Homeland Security, from October 2002 through June 2005. *See* Debra Stephens Aff. (docket no. 65-11).

plaintiff applied for positions as an emergency telecommunicator (dispatcher) and corrections officer. *Id.* at ¶ 15. Plaintiff withdrew her application for the corrections officer position, with the understanding that she could take the test the next time a position became available. *Id.* at ¶ 17.

At the final interview for the dispatcher position, held in June 2006, the County's HR representative, later identified as Ms. Grockau, repeatedly questioned plaintiff as to why she left her federal employment. *Id.* at ¶ 19. Sometime after the interview, plaintiff called Ms. Grockau to ask about Grockau's "dissatisfaction to her prior employment resignation answer." *Id.* at ¶ 20. Ms. Grockau allegedly told plaintiff that she knew of the EEO complaint, that "it wasn't good," and that she wanted plaintiff to admit at the interview that this complaint was the reason plaintiff resigned from the federal employment. *Id.* Plaintiff replied that the EEO matter was confidential and that it "shouldn't matter in [p]laintiff's quest for other employment." *Id.* at ¶ 21. When plaintiff asked Ms. Grockau how she learned about the EEO complaint, Grockau stated that " 'it didn't matter how she knew' because if [p]laintiff was ever hired, [d]efendant had 'two very good detectives' who performed background checks and they would find out about the EEO complaint as it was something they needed to know about a prospective employee, and a background [sic] wasn't necessary since [p]laintiff hadn't been chosen for any of the open dispatch positions." *Id.* at ¶¶ 21-22.

Through September 2007, plaintiff allegedly applied with the County "for over 20 posted openings in the Courts, Corrections, Dispatch, Clerk's office, Veteran's Affairs, Commission on Aging and Homeland Security liason." *Id.* at ¶ 23. Plaintiff was qualified for each of these positions, but was only granted two interviews after June 2006. *Id.* at ¶¶ 23-24.

In a letter dated February 28, 2007, plaintiff notified the County's Administrator, Dennis Aloia, that the County had retaliated against her for participating in "prior protected

activity." *Id.* at ¶ 25.² Plaintiff based her claim upon Ms. Grockau's knowledge of the EEO complaint and plaintiff's inability to secure interviews for other positions at the County. *Id.* When the County did not respond to the February 28th letter, plaintiff filed a complaint "for retaliation in a failure to hire for prior protected activity and possible age discrimination" with the Michigan Department of Civil Rights (MDCR)³ on March 28, 2007. *Id.* at ¶ 26. Plaintiff alleged that her MDCR action resulted in " 'no resolution' mediation" in August 2007. *Id.* While plaintiff's complaint included a copy of a "Dismissal and Notice of Rights" from the U.S. Equal Employment Opportunity Commission ("EEOC") dated January 30, 2008, she did not include specific allegations regarding the EEOC proceedings. *See* docket no. 1-2.⁴

Plaintiff filed the present civil action on April 28, 2008. In this action, plaintiff alleged that the EEO complaint was protected activity under the definition set forth in 42 U.S.C. § 2000e-3 (Title VII of the Civil Rights Act). *Id.* at ¶ 8. In addition, plaintiff alleged that the February 28, 2007 letter and the MDCR complaint were "protected activity." *Id.* at ¶ 27. Plaintiff summarized her claims as follows:

> 29. Upon Defendant's knowledge of (and apparent negative position to) Plaintiff's EEO complaints, Defendant used this against her by repeatedly blocking Plaintiff's ability to compete for positions for which she was qualified, and hired others.
>
> 30. Plaintiff has suffered detriment to her rights and a loss of earnings and benefits from Defendant's intentional failure to hire her because of her prior and

---

² A copy of the letter appears as exhibit E to the County's supporting brief. *See* docket no. 65-6.

³ Plaintiff sometimes refers to the Michigan Department of Civil Rights as the Michigan Office of Civil Rights.

⁴ The copy of the dismissal and notice of rights attached to plaintiff's complaint is not legible. Both plaintiff and the County subsequently filed a legible copy of this document. *See* docket nos. 65-10 and 83-11.

3

present protected activity and the use of age as a factor for determining eligibility in hiring.

*Id.* at ¶¶ 29-30 (footnote omitted).

Mindful that "[p]ro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings," *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999), the court finds that plaintiff has alleged three claims. First, that the County retaliated against her in violation of Title VII, 42 U.S.C. § 2000e-3 for engaging in protected activity with a former employer. Second, that the County discriminated against her in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Third, that the County violated Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2701(a) ("ELCRA"), because she "made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under [the] act." *Id.* at ¶ 9.

The court dismissed plaintiff's claim of age discrimination pursuant to a stipulation of the parties. *See* docket nos. 53 and 54. The County has moved for summary judgment on plaintiff's remaining claims of retaliation under Title VII and ELCRA.

## II. The show cause order

After hearing the parties' arguments on the summary judgment motion, and reviewing additional authority submitted by plaintiff, it appeared that plaintiff had failed to exhaust her administrative remedies with respect to many of the alleged Title VII violations. "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 379 (6th Cir. 2002), quoting *Strouss v. Michigan Dept. of Corrections*, 250 F.3d 336, 342 (6th Cir. 2001). For

4

this reason, the court issued an order to show cause as to why the court should not dismiss all of the alleged claims of retaliation except for the claims investigated by the EEOC. *See* docket no. 82.[5] Both parties filed responses to the show cause order.

The record reflects the following chain of events with respect to the exhaustion issue. Plaintiff received a letter dated March 19, 2007, from the EEOC, which referenced plaintiff's initial contact with that agency on March 13, 2007 and instructing her to file a questionnaire. *See* docket no. 83-5. Plaintiff filed a charge of discrimination with both the MDCR and EEOC on May 9, 2007, alleging retaliation and age discrimination. *See* docket no. 83-6.[6] A mediation session between plaintiff and the County was scheduled on August 1, 2007. *See* docket no. 83-7. There is no further record with respect to the May 9, 2007 discrimination charge filed with the MDCR.

Approximately five months later, on October 28, 2007, plaintiff completed an EEOC "Intake Questionnaire" alleging "retaliation for prior EEO discrimination complaint & possible age discrimination." *See* docket no. 83-10. In the Intake Questionnaire, plaintiff listed the date of the discriminatory acts as "6/06 ---> continuing." *Id.* Although plaintiff arguably limited her complaint to the June 30, 2006 interview, the EEOC's "right to sue" letter, dated January 28, 2008, identified two later incidents:

> The investigation shows that Respondent interviewed you on June 30, 2006 for the position of emergency telecommunicator for the central dispatch department and in October 2006, you were interviewed for the position of office specialist with

---

[5] The court notes that none of plaintiff's ELCRA claims are subject to dismissal for lack of exhaustion. "Unlike Title VII of the federal act, the Michigan Civil Rights Act does not require a plaintiff to exhaust administrative remedies before proceeding with a civil suit. M.C.L. § 37.1607; M.S.A. § 3.550(607); *Marsh v. Civil Service Dep't*, 142 Mich. App. 557, 370 N.W.2d 613 (1985)." *Stevens v. McLouth Steel Products Corp.*, 433 Mich. 365, 375, fn. 5, 446 N.W.2d 95 (Mich. 1989).

[6] Based on the documents submitted to the court, t appears that plaintiff filed her MDCR complaint on May 9, 2007, rather than on March 28, 2007 as alleged in the complaint.

5

>the commission on aging, and in January 2007 you were interviewed for a position as an office specialist in the county clerk's office.

*See* docket no. 65-9. The EEOC determined that plaintiff's allegation of retaliation was not substantiated by the record because respondent first became aware of her previous EEOC complaint after February 28, 2007, when plaintiff mailed a letter to County Administrator Dennis Aloia complaining that she had been discriminated against by the county because she filed the previous complaint. *Id.* As previously discussed, the EEOC entered its dismissal and notice of rights on January 30, 2008. *See* docket nos. 1-2, 65-10, and 83-11.

Plaintiff has not demonstrated that she exhausted the 20 (or more) Title VII claims referenced in her complaint. *See* Compl. at ¶ 23. Plaintiff has presented no evidence that the EEOC investigated, or should have investigated, any alleged violations other than the County's failure to hire her for the three positions referenced in the EEOC's January 28, 2008 letter. *See Weigel*, 302 F.3d at 379; *Strouss*, 250 F.3d at 342. Accordingly, plaintiff's Title VII claims for violations other than the three incidents referenced in the EEOC's January 28, 2008 letter, will be dismissed as unexhausted. *Id.*

### III. The County's motion for summary judgment

#### A. Legal Standard for summary judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Plaintiff's Title VII claim for retaliation

Plaintiff brings her federal claim under 42 U.S.C. § 2000e-3(a), which provides as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

A plaintiff has the ultimate burden of persuading the trier of fact that the defendant discriminated against her. *See Noble v. Brinker International, Inc.*, 391 F.3d 715, 721 (6th Cir.

7

2004). In order to establish a discrimination claim under Title VII, a plaintiff must produce either direct or circumstantial evidence of discrimination. *Grizzell v. City of Columbus Division of Police*, 461 F.3d 711, 719 (6th Cir. 2006). *See Noble*, 391 F.3d at 721, citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993) (the plaintiff may persuade the court that she has been the victim of intentional discrimination either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence). Plaintiff contends that there is both direct and indirect evidence of discrimination.

First, plaintiff contends that there was direct evidence of discrimination in the form of Ms. Grockau's statements (i.e., that Grockau knew of the EEO complaint, that the complaint "wasn't good," and that Grockau wanted plaintiff to admit at the interview that the complaint was the reason she resigned from federal employment). The County does not address this contention. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Company*, 319 F.3d 858, 865 (6th Cir. 2003), quoting *Jacklyn v. Schering-Plough Healthcare Products Sales Corporation*, 176 F.3d 921, 926 (6th Cir. 1999). Ms. Grockau's statements, viewed in the light most favorable to plaintiff, would require the trier of fact to conclude that retaliation was "at least a motivating factor" in the County's decision not to hire her. *See Johnson*, 319 F.3d at 865; *Jacklyn*, 176 F.3d at 926. Accordingly, the County's motion will be denied with respect to plaintiff's claim based upon direct evidence of discrimination.

Second, plaintiff contends that there is indirect evidence of discrimination under the burden shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973).

8

*See Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987) (proof of a retaliation claim under Title VII is governed by *McDonnell Douglas* burden shifting analysis). "In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in activity protected by Title VII; (2) the exercise of her civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 412 (6th Cir. 1999). Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the defendant's action. *Grizzell*, 461 F. 3d at 719-20. If the defendant carries this burden, then the plaintiff must prove that the legitimate reasons offered by the defendant were in fact a pretext for discrimination. *Id.* at 720.

### 1. Protected activity based upon legal action filed against previous employer

The County contends that plaintiff cannot assert a Title VII retaliation claim against the County, because the protected activity involved a previous employer. The County cites *Diaz v. Aschcroft*, 324 F. Supp. 2d 343 (D. P.R. 2004), in which the plaintiff (Diaz) claimed that the United States Marshals Service (USMS) rejected his application because a background report mentioned a prior EEOC complaint that Diaz had filed against the Fort Lauderdale Police Department. *Diaz*, 324 F. Supp. 2d at 348. The court reasoned as follows:

> Although this allegation sounds retaliatory in kind, the USMS is not the agency against whom Diaz filed the EEOC complaint. This Court is hard pressed to find federal case law that supports Diaz's theory, specifically, that a potential employer cannot legally seek to investigate and/or refuse to hire an applicant because he or she filed an EEOC complaint against another employer. Accordingly, this Court must **GRANT** summary judgment in favor of the defendant with respect to Diaz's retaliation claim.

9

*Id.* at 348-49 (footnotes omitted) (emphasis in original).

In reaching this determination, the court in *Diaz* raised two significant issues in footnotes. First, the court noted that the USMS "should be granted considerable leeway to investigate the backgrounds of potential USMS employees." *Id.* at 349, fn. 5. "Deputy U.S. Marshalls [sic] are responsible for securing the safety of federal judges and other federal officers, as well as custodying federal inmates, thus, thorough investigation of potential employees should be encouraged." *Id.* Second, the *Diaz* court noted a Sixth Circuit case that was contrary to its position:

> The Court of Appeals for the Sixth Circuit recognized such an action in *Christopher v. Stouder Mem'l Hospital*, but provided protection only where the former EEOC respondent is one "who significantly affects [the plaintiff's] access" to other employment opportunities. 936 F.2d 870, 875 (6th Cir.1991). This is not the case here.

*Id.* at 349, fn. 6.

The Sixth Circuit's decision in *Christopher*, which is binding on this court, merits further consideration. In *Christopher*, the plaintiff nurse filed a Title VII action against Stouder Memorial Hospital ("Stouder"), challenging the refusal to grant the nurse limited privileges that would have allowed her to work as a private scrub nurse for doctors at the hospital. The Sixth Circuit rejected Stouder's claim that the court lacked jurisdiction to hear the case because the plaintiff was neither an "employee" nor an applicant for employment at the hospital under 42 U.S.C. § 2000e-3. *Christopher*, 936 F.2d at 874-75. In reaching this determination, the Sixth Circuit agreed with the trial court that the term "employee" in Title VII must be read in light of the mischief to be corrected and the end to be attained, and repeated its previously expressed position that "Title

10

VII of the Civil Rights Act should not be construed narrowly." *Id.* at 875, quoting *Tipler v. E.I. du Pont de Memours and Co.*, 443 F.2d 125, 131 (6th Cir. 1971).

Having found that the plaintiff could proceed against Stouder, the court concluded that the evidence at trial established that members of Stouder's executive committee considered the plaintiff's prior Title VII lawsuit for sex discrimination at a different hospital in deciding to reject her application for privileges at the hospital *Christopher*, 936 F.2d at 873-74. Thus, the Sixth Circuit determined that the plaintiff could rely on a Title VII lawsuit brought against a previous employer as the basis for her Title VII retaliation claim against Stouder. This determination is consistent with *Wrenn*, 808 F.2d at 498-501, in which the Sixth Circuit acknowledged that the plaintiff established a prima facie case of retaliation under Title VII based upon a racial discrimination claim filed against a previous employer. *See Wrenn*, 808 F.2d at 501 (court observed that "[t]he district court correctly found that Wrenn's proofs established a prima facie case"). Even if this court found the *Diaz* opinion to be persuasive in support of the County's position, the Sixth Circuit has ruled otherwise in at least two published opinions. Accordingly, the County's motion for summary judgment will be denied on this ground.

### 2. The County had no knowledge of plaintiff's EEO complaint

The County contends that plaintiff cannot show the second and fourth elements of a prima facie case because there was no retaliatory intent. Specifically, the County could not retaliate against plaintiff because it had no knowledge of plaintiff's EEO complaint. The County's claim is without merit. At her deposition, plaintiff testified that Ms. Grockau knew about the EEO complaint when she interviewed plaintiff for the dispatch position in June 2006. Plaintiff testified that she had a telephone conversation with Ms. Grockau to discuss the interview. Hinds Dep. at 40-

11

43 (docket no. 65-2). Plaintiff was uncomfortable, because Ms. Grockau questioned her repeatedly as to why she left her previous federal employment at the TSA. *Id.* at 43. Plaintiff wanted to talk to Ms. Grockau to know if this questioning was going to happen in future interviews for jobs at the County. *Id.* at 43-44.

Plaintiff testified that the following conversation occurred:

> She said that she knew about my EEOC complaint and that she had been trying to get me to admit it and that it was something that she had been trying to get me to admit it and that it was something that an employer needed to know and it wasn't good. I mean, I was kind of dumbfounded by that and I just said, you know, "I'm hoping this isn't going to be an issue, because" -- and she told that when -- if I was ever considered for employment, there would be a background investigation and she had two detectives or sheriffs [sic] or detectives, whatever, I can't remember the word, who would do a background investigation and this would be something that they would find out. And I remember saying that it's not something someone is going to find out, because it's in the confidential stages and it's just not public information. You know, "I don't know where you got this information," and --

*Id.* at 44-45.[7]

Plaintiff had no idea how anyone would find out about the confidential EEO complaint, other than the fact that "[e]verybody at the airport that I worked with knew about it." *Id.* at 45. After her unsuccessful interviews, plaintiff eventually gave notice of the EEO filing to the County in her February 28, 2007 letter. *Id.* at 45-46. In her deposition, Ms. Grockau recalled talking to plaintiff on the telephone, but denied telling plaintiff that she "knew about the EEOC

---

[7] The record is somewhat confusing in that the parties appear use the terms "EEO complaint" and "EEOC complaint" interchangeably. The EEO complaint was filed with the Federal Office of Civil Rights on September 21, 2005. The court takes judicial notice that plaintiff filed a separate discrimination action under Title VII and the ADEA based upon the EEO complaint, that the court granted the defendant's motion for summary judgment on those claims, and that the court's decision was affirmed on appeal. *See Hinds v. Chertoff*, 1:06-cv-852 (W.D. Mich.) (Opinion and Order Feb. 8, 2008) (docket nos. 38 and 39) and *Hinds v. Napolitano*, No. 08-1995 (6th Cir. May 6, 2009) (docket no. 53). As previously discussed, plaintiff's EEOC complaint was not filed against the County until May 9, 2007, nearly one year after plaintiff's telephone conversation with Grockau (which plaintiff testified occurred in or about June 2006). *See* Hinds Dep. at 40-41.

12

complaint." Grockau Dep. at 21 (docket no. 65-5). In addition, Debra J. Stephens, the Human Resources Specialist for the TSA, stated that she did not have "any contact with any employee, agent, or official from Grand Traverse County regarding any matter involving Janice Hinds' employment with TSA." Stephens Aff. at ¶ 4.

Viewing the facts in the light most favorable to plaintiff, a genuine issue of material fact exists as to whether Ms. Grockau knew about plaintiff's EEO complaint filed at the TSA and whether she discussed this matter with plaintiff. Accordingly, the County's motion for summary judgment will be denied on this ground.

### 3. The County had a legitimate business reason to hire other applicants

Even if plaintiff established a prima facie case of retaliation, the County contends that it has demonstrated a legitimate business interest in hiring the three other candidates. *See Wrenn*, 808 F.2d at 502 ("Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates"). An employer's decision not to hire a particular candidate in favor of hiring a more qualified candidate is a legitimate, non-discriminatory reason under the *McDonnell Douglas* framework. *See White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 244-45 (6th Cir. 2005).

In *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), the Supreme Court explained the employer's burden to articulate a non-discriminatory reason for its adverse employment action:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly

13

set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

*Burdine*, 450 U.S. at 254-56.

Once the defendant presents a nondiscriminatory reason for the adverse employment action, "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemical Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) (analyzing age discrimination claim). This returns the burden of proof to plaintiff to prove discrimination "to a new level of specificity." *Mischer v. Erie Methodist Housing Authority*, 168 Fed Appx. 709, 714 (6th Cir. 2006), *quoting Burdine*, 450 U.S. at 255. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002) (internal citation and quotation marks omitted); *Manzer*, 29 F.3d at 1084.

Here, the County gives the following explanation for not hiring plaintiff:

Plaintiff scored significantly lower on the interviews than the individuals eventually hired for the office clerk, emergency telecommunicator, and office specialist positions. At the interview for the office clerk position, Plaintiff ranked herself an 8 out of 10 in terms of punctuality and admitted that she was not a "morning person." At the interview for the emergency telemcommunicator position, the County panel felt that Plaintiff "did not have a good idea of what 911 is really like" and that potential issues with scheduling and overtime might be a problem. At the interview for the office specialist position, it was simply determined that Plaintiff was not the proper fit for the job and that others were more qualified.

> Further, the individuals who were ultimately hired by the County were certainly qualified for the positions. The individual hired for the office clerk position had taken college business classes and had customer service experience. The individual who was hired for the emergency telecommunicator job had degrees in public service and public administration and had over 20 years of experience in law enforcement, including former employment as chief of police. Finally, the individual who was hired for the office specialist position had a degree in business administration and management and had 12 years of office management experience.

Defendant's Brief at 8-9 (internal citations omitted).

The County does not address its legitimate, non-retaliatory reasons with specificity. Noticeably absent from the County's articulation of its legitimate business reasons are: the required qualifications for each of the three positions; the identity of the successful applicants; the relevant qualifications of the successful applicants; the interview evaluation scores for the successful applicants; the relevant qualifications of plaintiff; and the interview evaluation scores for plaintiff. In this regard, the County simply refers to the court to copies of 35 pages of interview records and one page of Ms. Grockau's deposition. While the County has stated reasons that could support its decision to hire applicants other than plaintiff, it has failed to "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 255. Genuine issues of material fact exist with respect to the circumstances surrounding the County's decision not to hire plaintiff. Accordingly, the County's motion for summary judgment with respect to the Title VII claims will be denied.

    **C.**    **Plaintiff's state law retaliation claim under ELCRA**

Plaintiff has alleged retaliation under ELCRA, which provides in pertinent part as follows:

> Two or more persons shall not conspire to, or a person shall not:

>   (a) Retaliate or discriminate against a person because the person has opposed a violation *of this act*, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing *under this act*.

M.C.L. § 37.2701(a) (emphasis added).

The County seeks summary judgment on plaintiff's ELCRA claims using the same arguments it advanced with respect to the Title VII claims. The court will grant the County's motion for summary judgment in part, but for a different reason than asserted in the County's brief. As a federal employee, plaintiff's claim for workplace discrimination against the TSA was brought under federal, rather than state, law. "Federal employees must rely upon Title VII and other federal antidiscrimination statutes like the ADEA that apply to the federal government as the exclusive remedy for combating illegal job discrimination." *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006). *See Davis v. Runyon*, No. 96-4400, 1998 WL 96558 at *5 (6th Cir. Feb. 23, 1998) (federal employee could not bring claims "under the Ohio analog to Title VII and 42 U.S.C. § 1981" because Congress created an exclusive judicial remedy for claims of discrimination in federal employment); *Davis v. Potter*, No. 5:06-cv-44, 2008 WL 324251 at *3 (W.D. Mich. Feb. 5, 2008) (federal employee's claims brought under Michigan's Persons with Civil Rights Act and ELCRA are barred because federal employees must rely upon Title VII and other federal antidiscrimination statutes). Plaintiff's EEO complaint against the TSA was based upon Title VII, not ELCRA. Indeed, as a federal employee, plaintiff could not file a complaint against the TSA under that state civil rights statute. In the absence of a complaint filed under ELCRA, or some other action to enforce her rights under that statute, plaintiff cannot meet the requirements to establish a retaliation claim under ELCRA. *See* M.C.L. § 37.2701(a) ("a person shall not . . . [r]etaliate or discriminate against a person because the person has . . . filed a complaint . . . *under this act*") (emphasis added).

Accordingly, the County's motion for summary judgment will be granted as to plaintiff's ELCRA claims for retaliation based upon the filing of the EEO complaint against the TSA. The motion will be denied as to plaintiff's ELCRA claims for retaliation based upon the filing of the MDCR complaint on May 9, 2007.

**IV.  Conclusion**

For these reasons, the County's motion for summary judgment (docket no. 64) is **GRANTED** as to all of plaintiff's Title VII claims except for the three retaliation claims investigated by the EEOC, those being the applications for telecommunicator, office specialist, and office clerk; **GRANTED** as to plaintiff's ECLRA claims for retaliation based upon the filing of the EEO complaint; and **DENIED** in all other respects.

An order consistent with this opinion shall be issued forthwith.


Dated:  March 12, 2010                                  /s/ Hugh W. Brenneman, Jr.
                                                                           HUGH W. BRENNEMAN, JR.
                                                                           United States Magistrate Judge